## G. H. STAGGS et al. v. STATE.

No. A-8611.  Feb. 2, 1934.
(29 Pac. [2d] 135.)

J. Q. A. Harrod and L. W. Harrod, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiffs in error, hereinafter referred to as the defendants, were convicted of having possession of one complete copper still, and were each sentenced to pay a fine of $150, and to be confined in the county jail for a period of 60 days, and both defendants appeal.

The testimony on behalf of the state shows that Don Stone and other officers went to a house; the location and description being a one-story frame house and outbuildings located the first house east of the Oklahoma City and Norman Interurban, in the northeast quarter of section

34, township 11, range 3, in Oklahoma county, Okla. When the officers arrived at the house, they found both G. H. Staggs and S. H. Staggs there; they also found a whisky still set up, 250 gallons of mash, and 6 gallons of whisky. G. H. Staggs claimed he had just recently been released from the jail at Enid and had only been at home a day or two. The father claimed he was crippled and unable to work. The house where the still, mash, whisky, and the defendants were found was occupied by S. H. Staggs' son-in-law and daughter, Mr. and Mrs. Shepard, neither of whom was found anywhere near the place. S. H. Staggs claimed he was unable to work and had nothing to do with the still, mash, or whisky; that he did not live there; that the house was occupied by his son-in-law and daughter.

The defendants called C. M. Brantley, who stated that S. H. Staggs, the father of G. H. Staggs, lived near him in the oil field, some distance from the house where the defendants were found; they used water from the same well or hydrant; the defendant S. H. Staggs was in such health he could hardly get around the place; the defendants came to town the morning they were arrested in the afternoon with Mr. Brantley and left him in the city. The defendants state that, as they were returning from the city, near this house they met Mrs. Shepard, the daughter of S. H. Staggs, and she took the car to go get groceries, and these defendants went on up to the house where the defendants were found and arrested. The foregoing is the substance of the testimony. It would serve no useful purpose to set the testimony out in full.

The defendants have assigned four errors alleged to have been committed by the trial court. The first assignment is the court erred in failing and refusing to permit

the attorney for the defendants to make inquiry upon impaneling the jury upon the bias and prejudice of the jurors concerning the defendants and each of them. The defendants insist that the court should have permitted the jurors to answer on their voir dire the following question: "If the evidence in this case should disclose that the defendants, and each of them, have heretofore been convicted of the violation of the National Prohibition Act, would that prejudice you against them at the outset in the trial of this case?"

It is urged by the defendants that, in view of the fact that the defense of the defendant G. H. Staggs was predicated upon the fact that he had just served 125 days in the county jail in Garfield county, for a violation of the National Prohibition Act (27 USCA), by reason of his incarceration it was impossible for him to have committed the crime alleged in the information, and that the defendant had a right to know whether the fact of his former conviction of the violation of the Prohibition Act would prejudice the jurors against him, and defendants further urge that the defendant S. H. Staggs had also been convicted upon a violation of the prohibition law and that he had a right to know whether his former conviction would prejudice the jurors against him.

There is no showing made by the defendants that they, or either of them, were forced to trial before a prejudiced jury, or that any member of the panel that sat in the trial of their case was influenced directly or indirectly by the fact that the evidence disclosed a former conviction for a violation of the prohibition law.

This court, in Manning v. State, 7 Okla. Cr. 367, 123 Pac. 1029, said:

"A juror cannot be disqualified on his voir dire by asking him if it would have any bearing upon him in rendering his verdict in a case if it should develop during the trial that the defendant had prior thereto been convicted of manslaughter, and it is not error for the trial court to refuse to allow such question to be answered."

We think the question propounded to the jurors by the defendants was proper, and that the court should have permitted the question and required the jurors to answer, as the defendants had a right to inquire of the jurors on their voir dire and test their knowledge and to ascertain whether or not the jurors might be prejudiced against them. However, considering all the facts and circumstances in this case, we do not think that the action of the court in sustaining the objection to the question propounded is such an error as would justify this court in reversing this case.

It is next urged by the defendants that the application for the search warrant and the search warrant under which the officers made the search was insufficient to justify the issuance of the warrant for the search of the premises. After examining the affidavit for the search warrant and the search warrant, we hold the affidavit was sufficient to predicate the issuing of the search warrant, and the search warrant sufficiently described the premises.

The third and last question argued by the defendants is that the verdict of the jury is contrary to the law and the evidence. In brief, the testimony shows the defendants were at the house where the mash and whisky was found in a room where the still was located. The defendants denied they had anything to do with the still or mash or the whisky found there; that the house was occupied by a Mr. and Mrs. Shepard, who were a son-in-law and daughter of S. H. Staggs. Neither Mr. or Mrs. Shepard

appeared at the trial, and the defendants' testimony shows they did not know where they were. The jury heard the testimony and had an opportunity to judge the demeanor of the witnesses while on the stand, and, under the proper instructions of the court, found against the defendants. This court has many times held that, where there is any competent evidence, though conflicting, to sustain the verdict, this court will not interfere. There is little conflict in the testimony; the only conflict being that the defendants denied they lived at the house or had anything to do with the still that was found.

The evidence is sufficient to sustain the verdict. The defendants were accorded a fair and impartial trial. No errors appear in the record to warrant a reversal.

The judgment of the trial court is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.